In re the MARRIAGE OF Judith M. WIEDEMANN and Martin F. Wiedemann, Jr., Upon the Petition of Judith M. Wiedemann, Appellee,

And Concerning Martin F. Wiedemann, Jr., Appellant.

No. 85–1478.

Supreme Court of Iowa.

March 18, 1987.

Rehearing Denied April 9, 1987.

Patrick J. Madden of Stanley, Lande, Coulter & Pearce, Muscatine, for appellant.

John C. Stevens of Lewis & Stevens, Muscatine, for appellee.

Considered by REYNOLDSON, C.J., and LARSON, SCHULTZ, CARTER, and WOLLE, JJ.

SCHULTZ, Justice.

This is an appeal from the economic provisions of the dissolution decree. The court of appeals made two significant modifications to the trial court's decree. First, it decreased by $309,173 the amount of cash payment by respondent Martin F. Wiedemann, Jr., who received the principal assets of the parties in the form of stock in two closely held corporations, to petitioner Judith M. Wiedemann. Second, it reduced the alimony award granted petitioner from $1,050 per month to $500 per month after five years. In her application for further review, Judith assails the reduction of valuation of the closely held corporations, the amount of the award to her and the reduction of alimony after five years.

The parties were married in 1945, forty years prior to the hearing, while Martin was an army medic. Neither party brought material assets into the marriage and they struggled financially during the early years of the marriage. They raised four children. Martin did inherit a small sum from his parents, which is insignificant compared to the parties' present net worth.

At the time of the trial Martin was sixty-one years of age and in good general health, except that he is diabetic and takes medication. He completed three years of college, having majored in chemistry. Martin went into business with his father in Muscatine, Iowa, first as an employee and then as a partner. In 1961, Martin started his own business, Wiedemann Industries (WI), which builds baptistries for churches. In 1970, the parties started a real estate

management business, M.J. Management Enterprises (MJ), which provides housing for WI through a rental arrangement. Martin has always served as president of the two corporations and describes his position as head of research and development of all new products up to the point of manufacture. His salary is normally $100,000 per year.

Judith, age sixty at the time of trial, is in good health. She was within one credit of receiving a high school diploma. She did office work for Wiedemann Industries between 1961 and 1976. In 1976, the parties separated and she was terminated from her employment. Since that time she has worked at various jobs and now works part-time at a salary of $4.25 per hour. From 1973 until her termination she made $147 per week and received three bonuses amounting to $37,000.

Until the parties split up in 1977, both parties worked in the family industry, shared the child care and household chores and had joint checking accounts. In the nine years that the parties were separated before trial, Martin ran the family businesses exclusively.

The valuation of the net worth of the two corporations has been a source of dispute between the parties throughout these proceedings. The trial court valued the companies separately. We first look at WI.

Since its incorporation Martin has been the president and general manager of WI. It is a family business that grew quickly, and formal management skills were not developed within the corporation. Martin focused on product development and Judith focused on marketing. Martin's philosophy is to refrain from borrowing money, and the company therefore has no long term debt. Both the volume of sales and the number of employees of the company have grown steadily throughout the years. In 1984, the sales exceeded $2,200,000 and the company had sixty employees. At the time the company was incorporated it was the only manufacturer of portable and fiberglass baptistries in the country. In 1976, it had about thirty-five percent of the nation-

al market and presently it only has twenty percent. The company now has twenty-six competitors.

MJ was incorporated to own the real estate necessary for the business and to protect it from any substantial losses that might be incurred by WI. Martin owns 1,560 shares and Judith owns 1,440 shares in MJ. The plant is comprised of several buildings and occupies 53,820 square feet. MJ leases the real estate to WI for an annual rent of $35,000. At the end of 1984, WI owed to MJ back rent in the amount of $148,182.

In valuing WI, the trial court used a two-step valuation, arriving at a capitalized earnings factor and a book value factor. In determining the capitalized earnings, the ten year average of earnings, $35,766, was applied to a capital rate of return of ten percent on the first $15,000, twelve percent on the next $10,000 and fourteen percent on the balance. After adjustment upward by an additional ten percent, to account for ownership of a majority interest, and reduction of the sum by twenty percent to account for lack of market for the closely held corporation, the court determined that the capitalized earnings value was $279,210.

In determining the book value of the stock, the court used the value shown as $698,100. In its final step the court weighted the capitalized earnings by three and the book value by two, resulting in a fair market value determined by the court to be $446,765. As Martin owned 330 shares of the total 350 shares of WI, the court determined the value of this marital asset to be $421,226.

In determining the value of MJ the trial court used an asset value approach. It adopted the appraisal of the buildings and real estate done by an independent company and used by the tax assessor in 1983, but applied a twenty percent discount because of the state of the market. This showed the value of the buildings and real estate to be $694,800. The court added the account payable from WI of $148,182 and an additional accrued rent of $9,000 at the

time of trial. It determined the book value to be $851,982. Under the court's valuation Martin's stock was worth $443,031 and Judith's stock was worth $408,951.

In dividing the parties' property, the trial court attempted to achieve an equal division between the parties. It gave Judith the marital assets under her control and provided that she convey her stock in MJ to Martin within six months. She was to receive an immediate cash lump sum and an additional sum payable in seventy-two monthly installments. Martin was to receive the property under his control, pay the lump sum, and additionally arrange for redemption of Judith's MJ stock. A condensed summary of the trial court's division of property is as follows:

| Item | Judith | Martin |
|---|---|---|
| all other property | 286,600 | 232,970 |
| WI Stock | | 419,994 |
| MJ Stock (Judith to receive cash) | 408,951 | 851,982 |
| Lump sum payments | 200,222 | (200,222) |
| Redemption of MJ | | (408,951) |
| Net distribution | 895,773 | 895,773 |

The court of appeals, in contrast, concluded that the two corporations should be valued as one unit. It considered loans that WI made to the children of the parties, which were carried on the books in the amount of $118,220, to be uncollectable, and reduced the value of the stock in the companies to the sum of $800,000. The court of appeals modified the decree so that Judith received a cash award of $300,000 and a reduced sum of alimony after five years.

■ Our review of the provisions of a dissolution decree is de novo because the action is tried in equity. Iowa Code § 598.3 (Supp.1985). The factors to be utilized by the court in dividing the property of the parties and for the allowance of alimony payments are detailed in Iowa Code section 598.21 (Supp.1985). There are no hard and fast rules governing economic provisions in dissolution actions, however. *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984). Additionally, precedent is of little value on these issues; our decision must depend upon the particular facts relevant to each issue. *Id.* The basic rule is that the property division and alimony provisions of a dissolution decree must be equitable to both parties. *In re Marriage of Callenius*, 309 N.W.2d 510, 514 (Iowa 1981).

I. *Property division.* Martin's initial issue on appeal is the same issue raised by Judith on her application for further review. This issue concerns the valuation of two closely held family corporations.

In valuing the MJ corporation the trial court erred, Martin claims, in applying the capitalization of earnings method. This valuation by the trial court included artificially low rent payments and salaries actually paid rather than those that should have been paid. For an outside buyer of the business, these amounts would have to be adjusted to reach an accurate valuation. Additionally, Martin maintains that the capitalization rates applied were too high. Had these adjustments been made, Martin asserts that under a "willing buyer's analysis of value" of the earnings factor, the value would be $149,731. We believe this value is unrealistic.

Martin also attacks the book value used by the court, urging that it should have been reduced by the amount of the corporate loans to the children. He urges that this value should have been $579,880.

He further attacks the weighting method used by the court claiming that the earnings factor should have been dominant because it would have been of greater importance to a buyer. He suggests weighting the factors two to one, with earnings dominant, giving a final valuation of $293,114 for WI rather than the $421,226 value placed on the corporation by the trial court. Again, we disagree with Martin's proposed method of weighting.

■ The valuation of a closely held corporation operated by one person is difficult, especially when it is highly profitable, manufactures an unusual product and has weak lower management. When a value is obtained by capitalization of earnings, two problems emerge. First, it is assumed that

the owner will continue to contribute his or her expertise and effort. Under these circumstances this method essentially capitalizes the owner for his future earning capacity. This is especially unfair to an owner who may become ill or incapacitated and cannot obtain a modification of a property division decree. Second, this method may benefit the owner when either personal expenses or normal capitalization costs are included to a great degree in operating expenses, reducing net profits and estimated value. It is not uncommon for an owner to cover many normal personal living expenses through the corporation or to over-depreciate or undervalue inventory, all of which would decrease profits while increasing the owner's standard of living or the actual value of the company's assets.

In regard to the valuation of WI, we have carefully reviewed the record and the findings of fact by the trial court. Expert testimony was given as to the valuation of this company. The trial court did not accept this testimony in total, but arrived at its own valuation. While we do not necessarily adopt the trial court's methods, we believe the findings were well within the range of the evidence and should not be disturbed on appeal. *See In re Marriage of Bare*, 203 N.W.2d 551, 554 (Iowa 1973). While Martin has raised some valid arguments, including his challenge of the findings regarding the children's loans and how they affect book value, we believe that the trial court could have relied on other factors that would have increased the value of WI's stock considerably. We therefore decline to alter the trial court's valuation.

■ Turning now to the valuation of the stock in MJ, we believe the trial court again was well within the range of the evidence and its valuation should not be disturbed on appeal. We are aware that the buildings placed on the real estate were specifically made to order for WI's use; we also are aware that in the event of a sale it would be necessary to sell both corporations as a unit. However, the valuation for taxes, which Martin did not appeal, and the amount of insurance carried on the premises both greatly exceed the value placed on the real estate by the trial court. On this record we see no reason to second guess the trial court's valuation.

■ Martin had also urged, and the court of appeals agreed, that the two corporations should have been considered together in arriving at a valuation. Because of Martin's control over both corporations and the small amount of stock held by his children in WI, we have no quarrel with Martin's assertion. If the trial court had adopted this approach it necessarily would have given much more weight to the actual value of the assets owned by the two corporations. In its last taxable year WI had a closing inventory of over $445,000, over $50,000 of cash on hand, commercial accounts receivable of over $124,000, as well as a considerable amount in other fixed assets that had been heavily depreciated. Outside of the debt WI owed the MJ corporation, WI had liabilities of less than $9,000. When we consider the combined value of the assets of both corporations, we do not believe that Martin has a valid complaint against the trial court's overall valuation.

■ Martin, on appeal, and Judith, on application for further review, urged that the trial court and court of appeals respectively made an inequitable division of property. As Judith's arguments are based on a revised valuation of the property with which we do not agree, we will turn to Martin's arguments. He claims that the business is a product of his own ingenuity, creativity, talent, drive and hard work for twenty-five years. He down plays Judith's role in their success. Pointing to his age and situation, he maintains that the trial court's division, giving him the stock in the two corporations and Judith the low risk assets, is unfair. We find merit in his contentions.

Our review of the record shows that in this long marriage both parties contributed heavily to the marriage and to the assets accumulated during the marriage. The parties have been separated for over nine years and during this period of time Martin

has made a heavier contribution to the assets; however, we do not believe that this is of great consequence in determining a proper division of the assets. Our concern lies with the nature of the assets which the trial court awarded Martin. The assets awarded Judith, including the cash settlement, are not subject to the risk of substantial loss in value. On the other hand, the bulk of Martin's award is the stock in the two companies. While we accept the trial court's valuation of the stock, it obviously is much less convertible to cash and bears a much higher risk of decrease in value. By the same token, Martin may be able to dispose of the stock in these companies at a price higher than the value placed on it by the trial court. Under these circumstances we believe that an equal division of the property was inequitable. There need be neither an equal division nor a percentage division of the property; that which is determinative is an equitable and just award under all of the circumstances. *In re Marriage of Hoak*, 364 N.W.2d 185, 194 (Iowa 1985). The trial court in its quest to make an equitable division of the property essentially awarded Judith a sum of over $609,000 in cash. We believe that the amount of cash Martin should pay Judith, in order to receive full ownership of MJ and retain his ownership in WI, should be $450,000.

II. *Alimony.* Martin urges that the trial court erred in awarding Judith alimony in the sum of $1,050 per month until either party dies or Judith remarries. We find the award made by the trial court to be fair and equitable. The trial court correctly considered the length of the marriage and the disparity in the parties' earning capacities. Judith is entitled to an amount sufficient to allow her to maintain a standard of living reasonably comparable to that she enjoyed during the marriage. *See* Iowa Code § 598.21(3)(f). We conclude that it is not appropriate to decrease this alimony at the approximate estimated time of retirement. Martin undoubtedly will receive a much higher rate of social security than Judith will. Furthermore, the division of assets that we have made affords Martin a greater share of the assets and should allow him to continue receiving a high income.

III. *Modification.* We modify the decree by changing the provision that awards Judith a cash payment for her stock in MJ in the amount $408,951 and by substituting the sum of $249,778. We further hold that Martin should pay interest on that sum at the rate of ten percent from January 5, 1986, which is the period of time within which the trial court in its decree ordered Martin to see that the stock was redeemed. The cost of this appeal shall be paid by Martin.

We have considered all of the arguments and issues raised by the parties. Except as above modified the decree entered by the trial court is affirmed. We do not award attorney fees for this appeal to either party.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT DECREE AFFIRMED AS MODIFIED.