# IN THE COURT OF APPEALS OF IOWA

No. 15-1300
Filed August 17, 2016

IN RE THE MARRIAGE OF WILLIAM JOHN WRIGHT
AND KRYSTLE MARIE WRIGHT

Upon the Petition of
**WILLIAM JOHN WRIGHT,**
        Petitioner-Appellee/Cross-Appellant,

And Concerning
**KRYSTLE MARIE WRIGHT,**
        Respondent-Appellant/Cross-Appellee.
_____

Appeal from the Iowa District Court for Greene County, Steven J. Oeth, Judge.

The wife appeals and the husband cross-appeals the provisions of their dissolution decree. **AFFIRMED AS MODIFIED AND REMANDED.**

Dorothy L. Dakin and Judd N. Kruse of Kruse & Dakin, L.L.P., Boone, for appellant.

Vicki R. Copeland of Wilcox, Gerken, Schwarzkopf, Copeland & Williams, P.C., Jefferson, for appellee.

Considered by Vogel, P.J., Potterfield, J., and Mahan, S.J.*

Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015)

**POTTERFIELD, Judge.**

Krystle Wright appeals and William Wright cross-appeals the dissolution decree entered by the district court. Krystle maintains the district court incorrectly (1) valued the livestock and farmland in question, (2) calculated William's income for purposes of ordering child support, and (3) denied her request for trial attorney fees. She asks that we award her appellate attorney fees. In his cross-appeal, William disputes the district court's ruling regarding the farmland in question. William maintains the district court (1) incorrectly valued the parties' interest in the farmland because they did not own the land in question, but rather had an interest in a real estate contract to purchase the land; (2) incorrectly calculated the amount of debt still owed under the real estate contract; and (3) failed to consider that at least part of the value was a gift made to him alone.

### I. Background Facts and Proceedings

Krystle and William married in summer 2006, and they had one child during their marriage.[1] The parties had been married almost nine years at the time of the trial, which took place over two days, on April 9 and June 9, 2015.

At the time of trial, Krystle was thirty-one years old and William was thirty-three years old. Both were in good health. Krystle was considered a salaried employee and earned $44,345.00 a year. William was a self-employed grain farmer, and he also raised sheep for meat consumption and show.

---

[1] The parties stipulated to all issues involving physical and legal custody of their child before the dissolution proceeding commenced.

Although the parties were able to reach a stipulated agreement on many issues before trial, they asked the district court to determine the value and division of marital assets, including the livestock and farmland, and to determine William's annual income for purposes of calculating the child support award. Additionally, Krystle asked the court to order William to pay part of her attorney fees.

The parties testified in-depth about the farm operation including the number of livestock and the purposes for which the livestock were raised. Their estimates of the livestock's value varied significantly, with Krystle claiming the livestock were worth more than $400,000 while William maintained they were worth less than $50,000. William testified that he had sold most of his best show sheep and was left with sheep that would be sold primarily for consumption. Krystle testified only ten sheep a year generally were sold for consumption, and she placed a very high value on each of the sheep.

The parties each hired experts to testify about the value of the farmland and the farm machinery. The district court found that the experts were generally well-prepared and credible but noted the disparity of the values in their reports.

The district court filed its findings of fact, conclusions of law, and decree of dissolution on July 1, 2015. The court valued the livestock at $110,125. It found the farmland to be worth $263,973 with $75,000 debt still owed by the parties. The court found the parties' annual income to be almost equal and did not order either party to pay child support. Krystle's request that William pay her attorney fees was denied.

Krystle appeals, and William cross-appeals.

**II. Standard of Review**

We review dissolution cases de novo. "'Although we decide the issues raised on appeal anew, we give weight to the trial court's factual findings, especially with respect to the credibility of the witnesses.'" *In re Marriage of Sullins,* 715 N.W.2d 242, 247 (Iowa 2006) (citation omitted). "Ordinarily, a trial court's valuation will not be disturbed when it is within the range of permissible evidence." *In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007).

**III. Discussion**

**A. Value of Assets: Livestock**

Krystle maintains the district court incorrectly calculated the value the livestock. On the first day of trial, Krystle maintained the livestock had a value of $427,350, while William claimed they were worth $54,675. In the two months between the first and second trial date, William sold several sheep, and each party proposed different values at the second day of trial. Krystle asserted the remaining livestock were worth $361,323.29 and William asserted they were worth $45,813. The court ultimately valued the livestock at $110,125. Here, Krystle offers another new value; she maintains the district court should have found the value of the livestock to be $172,800.[2]

The district court noted the inconsistencies in the testimony of both parties regarding the livestock. William testified that most of the animals would be sold

---

[2] Krystle supports her current valuation of the livestock with the following:

| Number | Livestock | Price | Total Value |
|---|---|---|---|
| 132 | Ewes | $450 | $59,400 |
| 139 | Lambs | $600 | $83,400 |
| 2 (half owner) | Rams | $5000 | $10,000 |
| 2 | Rams | $10,000 | $20,000 |
| | | | $172,800 |

for consumption, so he valued them at $1.97 per pound. Krystle, on the other hand, used the sales of the most valuable show sheep as average and applied it to the entire stock of animals. Additionally, because the number of lambs to be born varies, and it is unclear how many of those will make good show sheep in the future, the court had many variables to consider when trying to determine the correct value of the livestock. Ultimately, the court averaged the 2012 and 2013 values that William had provided to his lending institution in order to obtain financing for his farm operation. The court provided the following reasoning:

> As the court understands [William]'s testimony, [he] is saying that he had certain livestock when he came into the marriage. That livestock, except for the breeding stock, has been sold either for consumption or for show. The proceeds are used to pay expenses and for some profit, but essentially the operation continues year after year. The court notes that in [William]'s financing statements, provided to the bank, [William] lists the value of his livestock as follows:
> 2009 -- $66,700
> 2010 -- $85,500
> 2011 -- $77,600
> 2012 -- $86,000
> 2013 -- $134,250
> It is interesting to note that before the dissolution proceedings started the livestock apparently had significantly more value than [William] now claims. The court, after considering the testimony and exhibits and including the cross-examination of [William], concludes the livestock has a value of $110,125. The court reaches this conclusion by averaging the 2012 value and 2013 value as listed on the financing statement. This is the value provided to the bank before the dissolution proceedings started. It is less than Krystle's valuation but more than [William]'s. It reflects that [William] has sold assets recently as reflected in Krystle's exhibits. . . . It is fair to assume that [William] has an inventory that will be able to match sales comparable to those years and still keep his breeding stock so as to keep his operation functioning.

Determining the value of the livestock is not an exact science. *See In re Marriage of McDermott*, 827 N.W.2d 671, 689 (Iowa 2013) (Appel, J., dissenting)

("In the end, establishing an appropriate property division in this case is a matter of art rather than science."); *see also In re Marriage of Conley*, 284 N.W.2d 220, 223 (Iowa 1979) (noting "equality does not need to be achieved with 'mathematical exactness'" (citation omitted)); *cf. In re Marriage of Dennis*, 467 N.W.2d 806, 808 (Iowa Ct. App. 1991) ("Because of the difficulty of the task of valuation [of closely held corporations], the law provides much leeway to the trial court, even permitting the trial court to devise its own scheme for valuation."). The district court considered all of the relevant testimony and exhibits and determined a value that is "well within the range of evidence." *In re Marriage of Wiedemann*, 402 N.W.2d 744, 748 (Iowa 1987). After our own review of the record, we do not believe the district court's valuation should be disturbed on appeal. *See id.* ("While we do not necessarily adopt the trial court's methods, we believe the findings were well within the range of the evidence and should not be disturbed on appeal.").

### B. Value of Assets: Farmland

The district court calculated the value of the farmland in question by multiplying the size of the farm and the number of tillable acres[3]—according to William and William's father's testimony—and the value per acre—as determined by Krystle's real estate appraiser. The court found the value of the farm to be $263,973. Both parties challenge the district court's determination.

---

[3] All thee appraisers, the one hired by Krystle, the one hired by William, and the one hired by William's parents in 2010, agreed the taxable acreage was 42.44 acres, not forty-five. William and William's father testified that of that, only thirty-one or thirty-two acres was tillable.

Krystle maintains the district court's reliance on William's interested testimony regarding the amount of tillable acreage was in error. She argues the testimony of her appraiser, which matched that of a previous appraisal, was more reliable. William and his father before him had farmed that particular piece of land for more than forty years; previous generations of their families farmed it before them. The district court found William and his father to be more knowledgeable about the number of acres that could be farmed, and because nothing in the records leads us to question this credibility finding, we decline to upset the district court's ruling on the number of tillable acres.

William maintains the district court should not have used the value of the farmland itself when determining the value of the parties' asset but rather should have found and used the value of their equity in the real estate contract. He maintains the proper amount to be considered was the amount that had been actually paid under the real estate contract, which he asserts is $43,748.47.[4]

We see no issue with the court considering the market value of the land, minus the outstanding debt, even though the purchase contract was still outstanding. William argues this is improper because there is a chance he could default on the contract and thus never realize the difference in value the court awarded him. But courts typically consider the value of the marital home at the time of dissolution, even though it is owned subject to a mortgage. *See e.g. In re Marriage of Romanelli*, 570 N.W.2d 761, 763 (Iowa 1997) (noting that at the time the marital home was awarded to the wife, it was encumbered by a mortgage

---

[4] We note that in his affidavit of financial status, filed a few days before the start of trial, William claimed the parties had paid $60,000 toward the real estate contract.

and a home improvement loan); *In re Marriage of Fidone*, 462 N.W.2d 710, 711 (Iowa Ct. App. 1990) (awarding each party one of the parties' homes along with the mortgage for that property); *In re Marriage of Lovetinsky*, 418 N.W.2d 88, 89 (Iowa Ct. App. 1987) (stating the wife could keep the marital home if she could remove the husband from the note and the mortgage encumbering the property). In this case, we believe it is even less likely that such a result will occur, as William's parents held the contract and had not enforced it even though the parties failed to make the payments as scheduled from 2010 to 2013.[5]

William's real argument is that the difference between the sale price and the appraisal price was a gift made only to him, and thus was not marital property to be divided by the court. *See* Iowa Code § 598.21(5) ("The court shall divide all property, except inherited property or gifts received or expected by one party, . . ."). The district court specifically rejected that claim, stating, "The difference between the fair market value and sales price was a gift to both [William] and Krystle as both were named as buyers on the contract." During direct-examination, William's father was asked who he intended to gift the land to, and he answered he had intended to give it to both Krystle and William. Moreover, no gift taxes were paid. Finally, even if it was a gift, there was no credible evidence the gift was intended to be given solely to William. *See In re Marriage of Miller*, 552 N.W.2d 460, 463 (Iowa Ct. App. 1996) ("The livestock, crops, machinery, rent reduction, use of certain equipment, and wages 'given' by [the husband's] family members do not truly represent gifts, or gifts to him alone. No

---

[5] Pursuant to the contract, the parties were supposed to make one $10,000 payment each year on December 1st. The parties made the payment in 2009 but only partial payments, at best, the next four years.

gift taxes were paid in any of the years in which the alleged gifts were made. Moreover, no true 'intent of the gift donor' can be ascertained from the evidence presented. If these items constituted 'gifts,' there is no evidence they were to be gifts solely to [the husband], and not given to both spouses or to the corporation. As such, we find no error in including the full value of the corporation among the marital assets." (citation omitted)).

Lastly, William maintains the district court improperly determined the outstanding obligation on the contract was $75,000 rather than $91,251.53. Although William's mother testified the parties had only made $43,748.47 in payments on the $135,000 sale contract, there was no indication that William would ever be expected to pay the $16,251.53 difference. As mentioned above, William represented to the court that he and Krystle had paid $60,000 toward the contract before trial commenced. Additionally, he testified that his parents had accepted the reduced payments each year in place of the $10,000 payments that were due. When asked on direct examination, William testified his parents had been accepting the proceeds of a certain amount of grain sales each year and had "just forgiven the rest."

For the reasons stated above, we believe the district court's valuation of the farmland, and the use of that valuation, is equitable.

**C. William's Annual Income**

The district court calculated William's income by figuring the average over five years, namely 2010 to 2014. In doing so, it allowed him to use all of the standard depreciation he claimed on his taxes and one-half of his section 179

expenses.[6]   The court concluded William's annual income was $44,720. Because Krystle's annual income was almost the same amount, $44,345, and the parties had agreed to share equally the physical care of their child, the court did not order either party to pay child support.

Krystle argues the district court's calculation is improper because it should have averaged William's income for only the three years preceding the trial. William does not dispute the formula or method used by the district court, but he concedes that an error in the amount of section 179 expenses for one of the years skewed his income, which is actually $50,514.

Here, where William's income has fluctuated substantially, it was necessary for the district court to average his income "over a reasonable period when determining the current monthly income." *See In re Marriage of Knickerbocker*, 601 N.W.2d 48, 52 (Iowa 1999).   While Krystle maintains that three years was a more reasonable time period because William's business selling show lambs "took off" after the 2011 grand championship win at the Tulsa State Fair, we do not believe the district court was wrong to consider a five-year period.   We have used a five-year period when determining the monthly income of a farmer in another dissolution proceeding.   *See, e.g.*, *In re Marriage of Looney*, No. 12-0299, 2013 WL 1452934, at *4 (Iowa Ct. App. Apr. 10, 2013) ("Notably, the five years used by the district court included one year with negative

---

[6] 26 U.S.C. § 179 (2015) allows a taxpayer "to treat the cost of any section 179 property as an expense," and "[a]ny cost so treated shall be allowed as a deduction for the taxable year in which the section 179 property is placed in service."   Here, the district court only allowed William to utilize half of his section 179 expense when calculating his income for child support purposes "in the interest of justice" and in the best interests of the minor child.

farm income, even after adjusting the figures for straight line depreciation. In our view, the five-year average was a realistic and properly documented snapshot of [respondent]'s income."); *In re Marriage of Hoag*, 380 N.W.2d 8, 10 (Iowa Ct. App. 1985). Moreover, William testified that his income in 2012 and 2014 was irregularly high due to the receipt of crop insurance proceeds those two years.

Although we have no concerns with the method used by the district court, because the section 179 expense for one year was transcribed incorrectly, we remand to the district court to reconsider whether child support should be ordered "based on the present financial circumstances of the parties and the child support guidelines." *See In re Marriage of Hoffman*, 867 N.W.2d 26, 37 (Iowa 2015).

### D. Attorney Fees

Krystle maintains the district court abused its discretion by denying her request for attorney fees. "'Whether attorney fees should be awarded depends on the respective abilities of the parties to pay. In addition, the fees must be fair and reasonable.'" *In re Marriage of Witten*, 672 N.W.2d 768, 784 (Iowa 2003) (citation omitted). We review the district court's decision regarding a request for attorney fees for an abuse of discretion. *See In re Marriage of Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997).

As the district court noted, both parties incurred substantial fees—including the cost of hiring multiple experts to value marital assets—and both earn similar annual salaries. We cannot say the district court abused its discretion in ordering each party to be responsible for their respective fees.

**E. Appellate Attorney Fees**

Krystle asks for an award of appellate attorney fees. Appellate attorney fees are not a matter of right but may be awarded at this court's discretion. *In re Marriage of McDermott,* 827 N.W.2d 671, 687 (Iowa 2013). Having considered the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal, *see id.,* we decline to award Krystle appellate attorney fees.

**IV. Conclusion**

Because the district court's valuation of the livestock and the farmland were well within the range of evidence, we decline to disturb either valuation on appeal. We do not believe the district court abused its discretion when it denied Krystle's request for attorney fees, and we decline to award her appellate attorney fees. However, because a transcription error led William's salary to be incorrectly figured, we remand for the district court to reconsider whether child support should be awarded. Costs of the appeal are to be assessed equally to each party.

**AFFIRMED AS MODIFIED AND REMANDED.**