# IN THE COURT OF APPEALS OF IOWA

No. 24-0891
Filed October 29, 2025

IN RE THE MARRIAGE OF ALISHA ANNE ORTON
AND ROBERT STEPHEN ORTON

Upon the Petition of
**ALISHA ANNE ORTON,**
        Petitioner-Appellee/Cross-Appellant,

**And Concerning
ROBERT STEPHEN ORTON,**
        Respondent-Appellant/Cross-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Scott J. Beattie, Judge.


        A husband and wife appeal the terms of their dissolution decree.

**AFFIRMED ON BOTH APPEALS AND REMANDED.**


        David E. Brick and Allison M. Steuterman of Brick Gentry, P.C., West Des Moines, for appellant/cross-appellee.

        Anjela Shutts and Katelyn Kurt of Whitfield & Eddy, P.L.C., Des Moines, for appellee/cross-appellant.


        Considered without oral argument by Greer, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

This appeal involves the terms of the decree dissolving the marriage of Alisha and Robert Orton. Robert appeals the calculation of his annual income and the spousal support awarded to Alisha. Alisha cross-appeals, arguing the district court should have awarded a property equalization payment or otherwise asks us to find the premarital agreement unenforceable. Alisha further requests appellate attorney fees. Upon our review, we affirm the district court and remand for a determination of appellate attorney fees.

## I. Background Facts and Proceedings

Robert and Alisha were married in 2006 and have four children. Robert was born in England and moved to Iowa in 2003 on a short-term visa. He inherited several properties in England, which he sold for $650,000, and formed Knightsbridge Homes, LLC.

Robert and Alisha met in 2005 and began dating. In February 2006, Alisha found out she was pregnant with the couple's baby. Robert agreed to get married if Alisha signed a premarital agreement that protected his businesses and other assets.

Robert's attorney drafted a premarital agreement and arranged for an attorney to meet with Alisha and advise her on the premarital agreement. Upon the attorney's review, the attorney recommended to Alisha that Robert's separate property be limited to the $650,000 he brought to his company in cash. The attorney drafted a second premarital agreement reflecting that change.

When Alisha presented Robert with the new draft, he refused to sign it and, after a discussion, Alisha signed the original draft. Alisha informed her attorney in writing that despite their discussion, she decided to sign the original.

During the parties' eighteen-year marriage, Robert's businesses grew exponentially. After Robert and his business partner decided to build homes independently, the partner returned Robert's original investment and Robert formed Orton Homes, LLC ("Orton Homes"). Much of the family's expenses were paid by Orton Homes. Alisha remained a stay-at-home mom throughout the marriage. Over the years, Robert created several additional business entities. Robert's business assets are currently encumbered by $79,566,877 in debt, which he personally guaranteed.

During the marriage, Robert and Alisha also jointly owned several properties. At the time of trial, the parties owned a home in West Des Moines valued at $2,600,000 and a vacation home on West Lake Okoboji valued at $1,940,000. Additionally, Robert and Alisha agreed to have Orton Homes construct a home to her specifications which she would own free of any debt upon the entry of the dissolution decree.

Robert's reported income during the marriage varied from year to year. According to his 2018 to 2022 joint tax returns, Robert's annual income was as follows:

| | |
|------|-----------|
| 2018 | $ 454,986 |
| 2019 | $ 163,889 |
| 2020 | $ 728,494 |
| 2021 | $1,599,387 |
| 2022 | $ 81,632 |

At the trial, the district court heard expert testimony from two experts and determined Robert's actual annual income was $1,196,597. Throughout the marriage, Robert paid approximately $39,247 in monthly personal expenses from his businesses. Based on the district court's income determination, it ordered Robert to pay $3104.96 per month in child support and awarded Alisha spousal support in the amount of $20,000 per month until either party dies, or Alisha remarries. Robert now appeals and Alisha cross-appeals.

## II. Standard of Review

Because dissolutions of marriage are equitable proceedings, our review is de novo. *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by them. *Id.* We will disturb those findings only if they fail to do equity. *Id.* "There are no hard and fast rules governing the economic provisions in a dissolution action; each decision depends upon the unique circumstances and facts relevant to each issue." *In re Marriage of Gaer*, 476 N.W.2d 324, 326 (Iowa 1991).

## III. Premarital Agreement

First, we address Alisha's challenge to the premarital agreement. Alisha does not argue that the premarital agreement is unenforceable but instead argues that (1) the terms of the premarital agreement require a division of business assets, and (2) equity requires division of the assets even if the agreement does not require it. We disagree and find the district court properly interpreted the premarital agreement.

Alisha first asserts we "declined to enforce the prenuptial agreement" in our unpublished decision *In re Marriage of McCabe*, No. 20-1121, 2022 WL 468738, at *2 (Iowa Ct. App. Feb. 16, 2022) and invites us to do the same here. However, in *McCabe* we found the "premarital agreement was procedurally unconscionable, and therefore unenforceable." 2022 WL 468738, at *2. Alisha does not raise an unconscionability challenge here,[1] and we decline to address an issue not raised on appeal.

Next, we turn to the interpretation of the premarital agreement. "As a general rule, prenuptial agreements are favored and should be construed liberally to carry out the intention of the parties." *In re Marriage of Gonzalez*, 561 N.W.2d 94, 96 (Iowa Ct. App. 1997); *see also* Iowa Code § 596.5 (2024). "[W]e construe and treat antenuptial agreements in the same manner as we do ordinary contracts." *In re Marriage of Christensen*, 543 N.W.2d 915, 918 (Iowa Ct. App. 1995).

We turn to the text of the premarital agreement. The disputed portion of the premarital agreement states:

> The parties agree that all property belonging to husband at the commencement of the marriage shall remain the separate property of husband. Husband shall have sole management and control over his separate property, and his separate property shall be subject to his disposition in the same manner as if no marriage had been entered into between the parties.

After considering the premarital agreement as a whole, we find the intent of the parties was to keep Robert's companies as separate property. We deny Alisha's

---

[1] Alisha not only does not raise a challenge to the validity of the agreement but concedes it was signed after she had the opportunity to consult with counsel.

request to treat the companies as a marital asset to divide, and we affirm the district court's enforcement of the premarital agreement. *See In re Marriage of Hansen*, No. 17-0889, 2018 WL 4922992, at *3 (Iowa Ct. App. Oct. 10, 2018) (enforcing premarital agreements to carry out the intent of the parties).

This conclusion is further supported by the evidence in the record of the circumstances that led to the signing of the premarital agreement. Prior to signing the premarital agreement, Alisha consulted with an attorney. Alisha's attorney made several edits to the agreement to emphasize that the parties would only not have an interest in the other's then-existing separate property. But that is not the version of the agreement Alisha signed. She signed the original version that did not include those edits despite the advice of her attorney and despite her understanding that signing it could put her at a disadvantage. Therefore, we must enforce the premarital agreement that the parties signed and give it the force the parties intended.

Accordingly, we affirm the district court's interpretation and application of the parties' premarital agreement.

## IV. Annual Income Determination

The parties dispute Robert's income determination, which is necessary to resolve the issues of child support and spousal support. Both parties presented expert testimony at trial. The district court found Alisha's expert more credible and adopted his expert opinion when setting Robert's annual income at $1,196,597.

Robert's expert utilized the five-year average of Robert's income which was $605,678. But he argued that two years were outliers and should be excluded from the income determination. He then averaged the other three years and gave

an opinion that Robert's income for spousal and child support should be approximately $450,000.

Alisha's expert determined Robert's five-year average income was $1,196,597. He reached this number by including the distributions Robert had taken from his companies over the same five-year period as the taxable income used by Robert's expert. He found Robert had taken on average $566,480 in distributions.

We determine the parties' incomes from the most reliable evidence presented. *In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991). Generally, the best evidence of income comes from completed income tax returns. *In re Marriage of Hansen*, 886 N.W.2d 868, 876 (Iowa Ct. App. 2016). But that income "may not necessarily equate to a party's adjusted net income on their tax return." *Id.* This may be especially true when calculating self-employed income or income generated from a closely held corporation. *See, e.g., In re Marriage of Wiedemann*, 402 N.W.2d 744, 748 (Iowa 1987) ("It is not uncommon for an owner to cover many normal personal living expenses through the corporation or to over-depreciate or undervalue inventory, all of which would decrease profits while increasing the owner's standard of living or the actual value of the company's assets."); *In re Marriage of McKamey*, 522 N.W.2d 95, 99 (Iowa Ct. App. 1994) (concluding that district court properly increased self-employed husband's income by amounts taken from business for personal use but claimed as business expenses on husband's tax returns).

We defer to the district court's determination of the experts' credibility. *See In re Marriage of Schildberg*, No. 05-0081, 2005 WL 3115872, at *2 (Iowa Ct. App.

Nov. 23, 2005) ("Normally, we defer to a district court's assessment of 'dueling' expert witnesses because that court is in a better position to judge the credibility of witnesses."). And on our review, we find Alisha's expert accurately calculated Robert's income by factoring in distributions from the businesses. *McKamey*, 522 N.W.2d at 99. So, we affirm the district court's income determination.

### V. Spousal Support Award

Robert next claims he should not be required to pay spousal support to Alisha in the amount of $20,000 per month. He argues (1) traditional spousal support is not available due to the length of the marriage and (2) the district court did not properly consider Alisha's earning capacity. We disagree.

While this court reviews spousal support awards de novo, we "afford deference to the district court for institutional and pragmatic reasons" and disturb its "determination of spousal support only when there has been a failure to do equity." *In re Marriage of Sokol*, 985 N.W.2d 177, 182 (Iowa 2023) (cleaned up). "Spousal support is not an absolute right; rather, its allowance is determined based on the particular circumstances presented in each case." *In re Marriage of Mills*, 983 N.W.2d 61, 67 (Iowa 2022). Iowa courts are "to equitably award spousal support by considering" the criteria listed in Iowa Code section 598.21A(1). *Mauer*, 874 N.W.2d at 107.

"In applying these statutory criteria, our precedents have recognized four forms of spousal support deemed equitable: traditional, reimbursement, rehabilitative, and transitional." *Sokol*, 985 N.W.2d at 185. Each type has a different goal, and the amount and duration of a spousal support award "should be tailored to achieve the underlying equitable purpose of the spousal support award."

*Id.* While these categories are not mutually exclusive, and hybrid awards are permitted, courts are not "free to award spousal support not corresponding to any recognized category of support." *Id.* at 186.

This case involves an award of traditional spousal support. "The purpose of a traditional or permanent alimony award is to provide the receiving spouse with support comparable to what he or she would receive if the marriage continued." *In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997) (en banc). In accordance with this purpose, therefore, "[t]raditional or permanent alimony is usually payable for life or for so long as the dependent is incapable of self-support." *Id*.

Marriages lasting twenty years or more are generally considered long-term and qualify for traditional spousal support. *In re Marriage of Gust*, 858 N.W.2d 402, 410–11 (Iowa 2015). However, marriages lasting less than twenty years may qualify. *In re Marriage of Pazhoor*, 971 N.W.2d 530, 543 (Iowa 2022); *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486–87 (Iowa 2012) (affirming a traditional alimony award following a sixteen-year marriage). The award and duration of a traditional alimony award "is primarily predicated on need and ability." *Gust*, 858 N.W.2d at 411 (citation omitted). The earning capacity of the parties is the driving focus in this analysis. *Id.*

Robert and Alisha were married for eighteen years at the time of trial. The district court found lifetime spousal support was equitable "[due to the length of the relationship and marriage." Throughout the marriage, Alisha has worked part-time sporadically. She does not hold any higher education except attending some community college courses before the marriage. The district court found Alisha's

*annual* income is $21,840. On the other hand, Robert runs a home-building company with a net *monthly* income of $60,000.

Next, we turn to Alisha's need for the level of support. Alisha's limited education and work experience negatively impact her earning capacity. But in addition, over the course of the marriage it is clear that Alisha became accustomed to a lifestyle that her earning capacity could not support. Based on our review of the record, we agree with the district court's finding that the parties lived a "lifestyle of significant means." The lifestyle the parties were accustomed to is a factor in determining need for spousal support. *See Gust*, 858 N.W.2d at 415 (noting the goal of spousal support is "to live in a fashion that approaches the lifestyle to which she was accustomed in the marriage"); *Pazhoor*, 971 N.W.2d at 543 ("Ideally, the support should be fixed so the continuation of both parties' standard of living can continue, if possible." (citation omitted)). The record shows the parties' monthly household expenses were supported by approximately $39,000 coming in from the businesses on top of Robert's income. These monthly expenses during the marriage included three homes valued at over $5,500,000, regular nanny services, private school tuition for the children, regular house cleaners, vehicles valued at $211,346, jewelry and designer handbags valued at $400,000, boats and docks at Lake Okoboji, and expensive house furnishings valued at $200,000. In addition, even after considering the earning capacity of the parties and the property settlement Alisha received, Alisha currently has little to no retirement assets. So, we find Alisha has established a need for a significant spousal support award.

Based on our de novo review and consideration of the statutory factors, we agree with the district court that traditional spousal support in the amount of

$20,000 per month is equitable and appropriate under the unique circumstances before us. *See* Iowa Code § 598.21A(1)(a)–(j).

## VI. Appellate Attorney Fees

Finally, Alisha requests appellate attorney fees. An award of appellate attorney fees is not a matter of right but rests in this court's discretion. *See In re Marriage of Towne*, 966 N.W.2d 668, 680 (Iowa Ct. App. 2021). Our "controlling consideration" is the parties' relative financial positions, but we also consider the merits of the appeal and "whether a party has been obliged to defend the trial court's decision on appeal." *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013).

Because Alisha was required to defend the appeal and prevailed, as well as her income relative to Robert, we find an award of appellate attorney fees is appropriate. However, Alisha should not be awarded appellate attorney fees for her cross-appeal. But because she has not provided an affidavit of attorney fees with documentation to support her request, we remand to the district court to determine the amount of Alisha's appellate attorney fees and enter judgment against Robert in a reasonable amount. *See Towne*, 966 N.W.2d at 680 (remanding for the district court to calculate "reasonable and necessary fees" incurred on appeal).

## VII. Conclusion

We affirm the district court's determination of Robert's income and the amount of spousal support awarded to Alisha. We further affirm the district court's enforcement of the parties' premarital agreement. We find Alisha is entitled to

appellate attorney fees and remand to the district court for a determination of a reasonable amount.

**AFFIRMED AND REMANDED.**