# IN THE COURT OF APPEALS OF IOWA

No. 25-0093
Filed December 17, 2025

IN RE THE MARRIAGE OF JENNIFER LEE SATHER
AND TIMOTHY JOHN SATHER

Upon the Petition of
JENNIFER LEE SATHER,
        Petitioner-Appellee,

And Concerning
TIMOTHY JOHN SATHER,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Dickinson County, Shayne Mayer,

Judge.


        A husband appeals the provisions of a temporary order in dissolution of

marriage proceedings.  **AFFIRMED.**


        Jamie Hunter of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines,

for appellant.

        Jessica A. Zupp of Zupp & Zupp Law Firm, P.C., Denison, and Michael L.

Sandy of Sandy Law Firm, P.C., Spirit Lake, for appellee.


        Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

Sandy, J., takes no part.

**GREER, Judge.**

Amid dissolution-of-marriage proceedings that began in May 2023, after the district court entered a second order on temporary matters, Timothy Sather (Tim) appeals. He argues that the district court's award to Jennifer Sather for temporary child support, spousal support, and responsibility for family expenses was excessive given his reported income. Each party requests an award of their appellate attorney fees. Upon our de novo review of the record, we affirm and decline to award appellate attorney fees.

## I. Background Facts and Proceedings.

Once dissolution of marriage proceedings were underway, the parties came to a temporary agreement in September 2023.[1] After a change of counsel and because of some new circumstances, Jennifer requested a temporary hearing in these proceedings to address temporary custody of the children, set the child support obligation, and award spousal support, along with responsibility for household and personal expenses. In December 2024, the court held a hearing to address these matters. Only Jennifer and Tim testified, but the district court also had the advantage of reviewing many exhibits including financial records and an income analysis report prepared by a financial expert, Matthew Kelderman, a certified public accountant, whom Jennifer had retained.

Tim owns several businesses in the Iowa Great Lakes area, including Oak Hill Marina and Oak Hill Outdoor. Tim and Jennifer own several other businesses

---

[1] The parties agreed that "[i]n lieu of child or spousal support, on a temporary basis, all earnings of the parties shall be deposited into the Northwest bank account . . . for the purposes of paying bills for the parties, and the minor children, including uncovered medical expenses."

jointly.[2]  Jennifer had worked for the Oak Hill Marina until these proceedings were underway and her employment was terminated.[3]  She then started working for a bank at around $43,000 per year.

Tim argued that his income was $120,000 per year.  Kelderman calculated Tim's annual income at $447,000 and Jennifer's at $120,000.  Kelderman derived Tim's income from the parties' businesses and Jennifer's income from her bank salary, plus investment earnings of $75,000 per year.[4]  Kelderman stated that in his "professional opinion that these income amounts are a more accurate depiction of the actual income of Tim and Jennfer as the total income does not include any accelerated depreciation, such as bonus depreciation or Section 179 accelerated depreciation, and attempts to exclude personal expenses from the business."

After reviewing the Kelderman report, the district court instead averaged Tim's income and loss from the years 2019 to 2023 to arrive at an annual income figure of $381,901 and utilized that number to determine his spousal-support and child-support obligations.  The district court set child support and spousal support, and required Tim to continue paying several personal living expenses that had traditionally been paid by the companies for Jennifer and the children's benefit.  Tim appeals from that temporary order.

---

[2] There were seven businesses named in the documents provided to the district court, we do not need to list them all here.

[3] Jennifer's employment was terminated at Tim's request in October 2024 and he also cancelled the health insurance for her and the children.

[4] Kelderman's rationale for the $75,000 investment income to Jennifer was his projection that Jennifer would ultimately have investment income on any cash or other assets while Tim would have the benefit of any income or loss from the business entities that he would likely retain.

## II. Standard of Review.

First, we note that temporary orders related to financial support to the family are final judgments appealable as a matter of right. *See In re Marriage of Sherwood*, 995 N.W.2d 522, 524 n.1, 526 (Iowa Ct. App. 2023). We review matters involving dissolution of marriage proceedings de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). Our review of spousal support awards is similarly de novo. *See In re Marriage of Mann*, 943 N.W.2d 15, 18 (Iowa 2020). "An appellate court should disturb the district court's determination of spousal support only when there has been a failure to do equity." *In re Marriage of Sokol*, 985 N.W.2d 177, 182 (Iowa 2023) (cleaned up). "We give weight to the factual determinations made by the district court; however, their findings are not binding upon this court." *Mann*, 943 N.W.2d at 18 (cleaned up).

## III. Discussion.

**A. Determination of Income.** Both issues raised by Tim relate to how his income was determined and what is fair support for Jennifer and for the children. Tim sets out the following payments he was required to make under the temporary order for child support and spousal support as:

    3,139.48 (child support)
    2,600.00 (spousal support)
    1,254.00 (Jennifer's utilities)
    2,385.00 (Jennifer's house payment)
    316.00 (Jennifer's homeowner's insurance)
    1,288.00 (Jennifer's car payment)
    80.00 (Jennifer's car insurance)
    Total : $11,062.48

He asserts that these payments are too high and do not take into account his actual income. Complicating matters, as noted above, it came to light that many of the

parties' personal expenses are paid by the various companies they own. Like the district court, we find that the challenge is to determine what the income is for Jennifer and Tim. Much of their financial history is complicated because they have many businesses, some interrelated, from which they derive income but also from which many personal expenses are paid. At the temporary-support stage with minimal testimony, where an hour-long hearing was allowed, the district court can be at a disadvantage to assimilate a complete and accurate picture of the income trail.

When questioned about the income reported on the tax returns, Jennifer noted her "income stated on those returns is not accurate or representative of the income that [she] actually ha[s] access to to provide care for [her] daughters." Here, because of Tim's self-employment and the historical trend to spend from the businesses for personal expenses, on our de novo review, we find "we are not limited to income that is reportable to the federal government as income." *In re Marriage of Redenius*, No. 21-0593, 2022 WL 946206, at *2 (Iowa Ct. App. Mar. 30, 2022) (cleaned up) (providing an extensive list of cases discussing the difficulties establishing self-employment earnings); *In re Marriage of Wiedemann*, 402 N.W.2d 744, 748 (Iowa 1987) ("It is not uncommon for an owner to cover many normal personal living expenses through the corporation or to over-depreciate or undervalue inventory, all of which would decrease profits while increasing the owner's standard of living or the actual value of the company's assets."); *In re Marriage of McKamey*, 522 N.W.2d 95, 99 (Iowa Ct. App. 1994) (finding it proper to allocate amounts taken from a self-employed spouse's business to his income when those amounts were taken for personal use).

The district court reviewed exhibits that listed personal distributions by Tim in previous years. Although Tim claimed to have mental-health and physical issues, as well as cash flow problems with his businesses, the exhibit listed 2023 personal distributions totaling $456,000. Kelderman also considered the personal expenditures made by the businesses to pay for the post-separation living expenses for Tim and for Jennifer in arriving at his numbers. And while Tim argues that the district court used only salary income for Jennifer, during the temporary stage of the dissolution of marriage proceedings, she does not have access to any investment earnings.

Even though the district court noted that "[w]ithout a forensic accounting, it is nearly impossible for the Court to accurately determine Tim's income with the limited record a temporary hearing provides," there was more data available than simply affidavits and testimony given the detailed financial records submitted. "The court must determine the parent's current monthly income from the most reliable evidence presented." *In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991). "Where the [parties'] income is subject to substantial fluctuations, it may be necessary to average the income over a reasonable period when determining the current monthly income." *Id.* Thus, we find the district court's analysis of income for the parties to be reasonable after considering the limited information presented at the temporary hearing. *Sherwood*, 995 N.W.2d at 526.

**B. Child Support Calculation.** We find the district court's determination of Tim's income was equitable along with the award for child support. The district court correctly applied the child support guidelines using the income figures that we also accept. *See In re Marriage of Hilmo*, 623 N.W.2d 809, 811 (Iowa 2001)

(noting we apply the child support guidelines as the correct determination for a monthly obligation); *see also* Iowa Code § 598.21B(2)(c) (2023) (creating a rebuttable presumption that the amount of child support resulting from application of the guidelines is the correct amount). We see no reason to disturb the temporary ruling related to the child support award.

**C. Spousal Support Award.** As for the spousal support of $2,600 per month and other expenses Tim was ordered to continue to pay, the parties' lifestyle supported that award as both Tim and Jennifer reported monthly expenses exceeding $14,000, although Tim did not include on his financial affidavit his condo or vehicle payments, which one of the companies also paid. "In making temporary orders, the court shall take into consideration the age of the applicant, the physical and pecuniary condition of the parties, and other matters as are pertinent, which may be shown by affidavits, as the court may direct." Iowa Code § 598.11(1). The district court considered the factors as required under the statute. Historically, the parties paid many of the personal expenses from the businesses and we see no reason to modify that practice during the temporary stage of the dissolution proceedings. Likewise, we do not find that spousal support of $2,600 is unreasonable given the disparity in income between Tim and Jennifer. *See In re Marriage of Hansen*, 733 N.W.2d 683, 704 (Iowa 2007) (considering comparative income of the parties to establish proper award of spousal support). In considering the pecuniary situation of the parties, the district court noted its concern "with providing Jennifer a reasonable way to maintain her and the children's standard of living pending trial and [the court] believe[d] that ordering Tim to continue to

provide for the upkeep of the marital expenses in lieu of large monetary monthly alimony payment, [wa]s the best way to temporarily do this."

Tim asserted that Jennifer had available to her $2,600 that his uncle provided the family, but the court rejected that argument as it disagreed that the funds were available to her. Instead, it ordered Tim to pay that same amount as spousal support. We also note Tim's excessive use of company monies during the pendency of this matter and do not find his arguments about the declining business cash flow to be persuasive.

In the end, "we will disturb the trial court's order only when there has been a failure to do equity." *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015) (cleaned up). We find that the spousal support award, plus the allocation of other expenses traditionally paid by the businesses, is equitable. We do not disturb the district court's ruling on those financial awards.

**D. Attorney Fees.** Both parties request an award of appellate attorney fees in this matter. Jennifer presented an affidavit related to attorney fees, but it was not itemized by activity, so it is difficult to know what amount to award at this level. So, we decline to award fees at this time. We assume the overall responsibility for the parties' attorney fees will be addressed at the time the division of assets and debts of the parties are resolved below.

**IV. Conclusion.**

We find the district court's determination of Tim's income was reasonable and that the awards for child support and spousal support were equitable. We decline to award attorney fees.

**AFFIRMED.**