In re the MARRIAGE OF Lynn Ray
DENNIS and Mickey Gaye Dennis

Upon the Petition of Lynn Ray
Dennis, Appellant,

And Concerning Mickey Gaye
Dennis, Appellee.

No. 90–28.

Court of Appeals of Iowa.

Jan. 29, 1991.

Thomas D. Hanson of Hanson, Bjork & Russell, Des Moines, for appellant.

Gary S. Gill, Des Moines, for appellee.

Heard by DONIELSON, P.J., and SACKETT and HABHAB, JJ.

DONIELSON, Presiding Judge.

In this marital dissolution case the trial court divided the parties' property approximately equally. The husband, petitioner Lynn Dennis, appeals the trial court's valuation of stock in a closely-held corporation and challenges the allocation of corporate stock ownership. We affirm in part, reverse in part, and remand with directions.

■ Our review of the provisions of a dissolution decree is de novo because the action is tried in equity. Iowa R.App.P. 4. The partners in the marriage are "entitled to a just and equitable share of the property accumulated through their joint efforts." *In re Marriage of Havran*, 406 N.W.2d 450, 452 (Iowa App.1987). The distribution of the property of the parties should be that which is equitable under the circumstances after consideration of the criteria codified in Iowa Code section 598.-21(1). *In re Marriage of Estlund*, 344 N.W.2d 276, 280 (Iowa App.1983).

Lynn Ray Dennis and Mickey Gaye Dennis were married on February 16, 1964. They dissolved their marriage on October 18, 1989, and divided their debts and assets. Three children were born of the marriage and provisions regarding child support and custody are not at issue. The principal dispute between the parties at trial and now on appeal involves the division of their closely-held corporation called "Dennis Parking Lot Maintenance, Inc."

The corporation's principal activity is contracting with private and governmental entities to apply markings to roads, parking lots, airport runways, etc. In late 1968 or early 1969, the parties acquired the business. Prior to the acquisition of the business, Mickey had been employed outside of the parties' home, but once the business had been acquired it became the parties' full-time business. Each worked for and contributed to the business venture: Mickey handled phone calls from customers and performed certain bookkeeping functions (in addition to child rearing and homemaking functions). Lynn bid the contracts, operated the machinery, obtained supplies and equipment, oversaw the completion of the work, hired, and fired employees, and obtained financing.

Although each party owned 50 percent of the corporate stock, Lynn maintains that he is the corporation and asserts that Mickey's contributions were minimal. Mickey disagrees. Both parties wanted full ownership of the business and wished to buy out the other party.

At trial the parties presented evidence concerning their belief as to the corporation's value. Donald Briggs, a CPA employed by Lynn, placed a value of $290,000 on the corporation as a "going concern." However, upon cross-examination, Briggs testified he would not advise Lynn to sell the business for less than the book value determined in April 1989.

The previous bookkeeper of the corporation placed a net book value on the corporation as of April 30, 1989, at $331,901.

The personal financial statement of Lynn prepared by Briggs for a bank loan places a book value on the corporation as of January 31, 1989, at $536,042.

The 1988 federal corporate tax return for the corporation (for an eight-month period) places yet another value on the business.

As stated previously, both parties wanted to buy out the other and own the business outright. As part of her trial testimony, Mickey indicated she was willing to buy Lynn's half for $230,000 cash within ten days. Lynn opined that his half of the business was worth $290,000 but Mickey's half was worth $120,000. Lynn testified he would take $290,000 (if tax-free) for his half of the corporation.

Faced with these differing opinions concerning value, the court concluded the cor-

poration was worth more to either of the parties than the amount indicated by Briggs. The trial court concluded that the fairest way for it to establish an actual fair market value, in light of the fact that both parties wished to buy out the other, would be through a bidding process between the parties, and only the parties, themselves. In arriving at this conclusion, the district court considered the respective financial resources of the parties and the potential tax consequences to both buyer and seller. The court ordered the parties to submit their bids to the court during a one-hour proceeding, following an opportunity to fully examine the books and records of the company. Lynn objected to the use of the bidding procedure but the trial court overruled the objection.

Both parties attended the bidding proceeding accompanied by their respective attorneys. After the bidding was concluded, the court entered a supplemental decree finding the fair market value of the corporation was $576,000, double the amount of Lynn's prevailing bid of $288,000 for Mickey's 50 percent stock ownership. Lynn retained the corporation and was ordered to pay Mickey $288,000 as additional property settlement; $48,000 was to be paid within ten days of the date of the decree (November 1989), the remaining payments, with interest, to be made in installments and completed by November 1994.

Lynn appeals. He believes the corporation's value should have been set at $290,-000 and the court erred in adopting a bidding process. He also believes his interest in the corporation should have been set at 65 percent rather than 50 percent because Mickey's positive contributions to the marriage and corporation are diminished by her "negative" contributions (allegedly skimming off corporate monies and failing to make certain tax payments on time, costing the corporation additional penalties and interest).

*Valuation.* "The purpose of determining value is to assist the court in making equitable property awards and allowances." *In re Marriage of Moffatt,* 279 N.W.2d 15, 19 (Iowa 1979). "The general rule is that stock should be valued at market value if it can reasonably be ascertained." *Id.* However, the valuation of a closely held corporation is difficult, *see In re Marriage of Wiedemann,* 402 N.W.2d 744, 747–49 (Iowa 1987); *In re Marriage of Hitchcock,* 309 N.W.2d 432, 435–36 (Iowa 1981), and the market value of stock in a closely-held corporation can rarely be ascertained, *Moffatt,* 279 N.W.2d at 19. Because of the difficulty of the task of valuation, the law provides much leeway to the trial court, even permitting the trial court to devise its own scheme for valuation. *See Hitchcock,* 309 N.W.2d at 435.

■ Yet, the law does not provide so much "leeway" as to condone the relinquishment of judicial duties. It is the province of the trial court to determine the value of marital property. The trial court cannot delegate this responsibility to the parties. The use of a bidding process by a trial court avoids the judicial responsibility of valuation and is, therefore, an unacceptable methodology.

We recognize how the use of a bidding process might appeal to the district court in a difficult valuation situation. When confronted with multitudinous valuations which differ by several hundred thousand dollars, it could be tempting to treat the parties as willing buyers/willing sellers and let them set their own value. However, a bidding process is inappropriate where the buyers are litigants in a dissolution proceeding.

Were the parties capable of agreeing on the value of the marital property, and were the parties willing buyers or willing sellers, it is unlikely a valuation decision would confront the district court. But when the district court is presented with the question of the value of marital property, it is also presented with dissolution litigants who are in a highly charged setting. Parties may be experiencing a number of emotions including depression, anger, vengeance, or stress. Furthermore, there are several mechanical difficulties and potential inequalities that may arise in this type of transaction and affect the bidding, such as: the availability of financing and other re-

sources (i.e., access to guarantors or banking connections, etc.), the establishment of management, and the reputation of the respective spouses. In such a setting, we do not believe a trial court is able to take sufficient precautions to ensure a fair value will result from a bidding process.

For the foregoing reasons, we reject the district court's utilization of this type of a bidding process to establish the value of marital property. We reverse the valuation established by this procedure.

 We are not persuaded by Lynn's contention that the only competent evidence relating to the value of the corporation is Briggs' expert testimony of $290,-000. He argues the trial court was required to adopt this valuation. A similar argument was rejected in *Wiedemann,* 402 N.W.2d at 748, and we likewise reject Lynn's contention. The trial court is free to consider any and all evidence of the value of Dennis Parking Lot Maintenance, Inc. including the credibility of the expert witness' testimony, the credibility of the parties, and each party's opinion as to the value of the corporation. Our dispute with the trial court is with the trial court's method of valuation, not necessarily the value placed upon the business. We remand to the district court for reconsideration of the record evidence and for a determination of value.

 *Allocation of Corporate Shares.* Even though Lynn and Mickey each held 50 percent of the corporation shares, Lynn contends the trial court should have awarded Mickey only 35 percent of the corporation's value. He asserts the trial court "credited" Mickey for her positive contributions to the marriage and corporation (through employment, homemaking and child care) but failed to "charge" her for the alleged mishandling of corporate tax obligations and misuse of corporate funds.

The district court apparently ignored Lynn's allegations of misbehavior. It concluded that both parties were entitled to 50 percent of the value of the corporation. We have reviewed the record and similarly disregard Lynn's allegations. This court concludes, as did the trial court, that the joint contributions and efforts of the parties entitle each to a 50 percent share in the corporation.

We affirm the trial court's allocation of corporate stock. We reverse the trial court's valuation of the stock and remand with directions.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.