## IN THE COURT OF APPEALS OF IOWA

No. 16-1135
Filed December 21, 2016

IN RE THE MARRIAGE OF BRIAN L. FREIBERG
AND AMANDA J. FREIBERG

Upon the Petition of
**BRIAN L. FREIBERG,**
         Petitioner-Appellant,

**And Concerning**
**AMANDA J. FREIBERG,**
         Respondent-Appellee.
_____

Appeal from the Iowa District Court for Marshall County, James A. McGlynn, Judge.

Brian Freiberg appeals the child custody, visitation, and property division provisions of the decree dissolving his marriage to Amanda Freiberg. **AFFIRMED AS MODIFIED.**

Lynn C.H. Poschner of Borseth Law Office, Altoona, for appellant.

Barry S. Kaplan and C. Aron Vaughn of Kaplan & Frese, L.L.P., Marshalltown, for appellee.

Considered by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**BOWER, Judge.**

Brian Freiberg appeals the district court decision granting physical care of the parties' children to Amanda Freiberg, denying his request for additional visitation, and failing to establish the value of the marital residence. We find the court properly granted physical care to Amanda and denied Brian's motions for additional visitation. However, we determine the court improperly delegated the valuation of the marital residence. We affirm as modified.

## I. Background Facts and Proceedings

Brian and Amanda Freiberg were married on August 3, 2007. The couple has two children, G.F. and A.F., seven and five years old at the time of the trial respectively. Brian filed for dissolution of marriage on March 25, 2015, asking for physical care of the children or, in the alternative, shared physical care.

During the pendency of the dissolution, Brian and Amanda divided parenting time according to a schedule both parties agreed to, and both remained in the marital home with the children. During the week, and during Amanda's parenting time, the children stayed at the house, but during Brian's weekends, he took the children to stay at his father's farm. Amanda became increasingly unhappy with the living and parenting arrangements, and asked Brian to permanently move to his father's home. During the time the family remained in the home, arguments and confrontations increased, placing additional stress on G.F., who acted out at home and school.

Amanda requested the appointment of a custody evaluator, and Dr. Brian Steiner was appointed. Dr. Steiner had previously acted as a marital counselor for the Freibergs and was familiar with the family. Trial was held April 6 and 7,

2016, and a decree of dissolution was filed on May 3, 2016. The court granted joint legal custody of the children to the parties and placed physical care with Amanda. A minimum visitation schedule was established if the parties could not agree on a more liberal schedule. Additionally, the decree awarded the marital home to Amanda and awarded one-half of the equity in the home to Brian. The court required Amanda to refinance the home in order to remove Brian from the mortgage and use the refinance appraisal to establish the value of the residence. Brian appeals the decision concerning physical care, visitation, and the court's failure to establish the value of the home.

## II. Standard of Review

Equitable actions are reviewed de novo. Iowa R. App. P. 6.907. We examine the record and adjudicate the rights of the parties anew. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Because the district court is in a unique position to hear the evidence, we defer to the district court's determinations of credibility. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992).

## III. Physical Care

Our supreme court has set out a non-exclusive list of factors which we use to determine the best interests of the child when deciding physical care. *In re Marriage of Winter*, 223 N.W.2d 165 (Iowa 1974). Portions of the Iowa Code must also be considered. *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007) ("Although Iowa Code section 598.41(3) [(2015)] does not directly apply to physical care decisions, we have held the factors listed here as well as other facts and circumstances are relevant in determining whether joint physical care is

in the best interest of the child."). We note "[t]here is no preference for mothers over fathers, or vice versa." *Id.*

Brian claims the district court erred by refusing to grant joint physical care. When considering whether joint physical care is in the best interests of the children, the court should consider: (1) the stability and continuity of caregiving, (2) the parents' ability to communicate, (3) a history of conflict between the parents, and (4) the degree to which the parents agree to a parenting approach. *Id.* at 696-99. These factors are not exclusive, nor should all factors be given equal weight. *Id.* at 699. Brian claims all four factors weigh in favor of joint physical care.

We find the balance of factors does not favor Brian. Although the parties were able to adjust the visitation schedule during the pendency of the dissolution in order to accommodate family emergencies, Amanda and Brian have demonstrated an inability to communicate effectively. The district court noted "Amanda's palpable bitterness . . . interferes with the ability of these parents to communicate regarding the welfare of their children."

Both parties have accused the other of belittling them in front of the children. The parties have had arguments with each other, thrown objects, engaged in verbal abuse, and in physical confrontations. "It appears to the [district court] that the arrangement [during the pendency of the dissolution] occurred for the strategic benefits of each parent, not to promote the best interest of the children." The parties were willing to increase the stress on themselves, and their children, for several months in order to hold their ground against the

other. Neither party was willing to put aside petty arguments, even though it negatively impacted their children. This factor does not favor joint physical care.

The parties also disagree on how to approach parenting. These differences are not extreme but do impact the children and the ability of Amanda and Brian to co-parent. The parties have different personalities and parenting styles, as summarized by the district court, "Amanda appears to prefer structure, organization and discipline. Brian prefers more free form, hands-on types of activities such as farming, operating excavating equipment and flying airplanes." This difference has led to some difficulty, with Amanda accusing Brian of failing to adhere to the routine the children were used to. This lack of structure required the children, G.F. in particular, to "re-acclimate" to staying with Amanda. Amanda also wants the children to attend a private Christian school. Brian does not outright object but did state he was reluctant to continue paying the tuition. Both these issues have led to conflict in the past, and if joint physical care was established, these areas would certainly lead to a breakdown of the co-parenting relationship. We find these differences in the approach to parenting do not favor joint physical care.

Finally, we find the stability and continuity of caregiving weighs slightly in favor of Amanda. The children will continue to live in the same house and neighborhood if physical care remains with Amanda. Additionally, it is likely G.F. will remain at the same school. Lastly, testimony at trial shows Amanda is better at maintaining and implementing structure and routine. In all, these factors favor placing physical care of the children with Amanda, and we affirm the district court.

## IV. Extraordinary Visitation

Brian next claims the visitation schedule established by the district court should be modified in order to expand his visitation. In the past, we have held "liberal visitation rights are in the best interest of the children." *In re Marriage of Lacaeyse*, 461 N.W.2d 475, 477 (Iowa Ct. App. 1990). However, the visitation requested by Brian would more or less establish a joint physical care arrangement. We have already declined to grant Brian joint physical care, and we will not increase visitation to accomplish the same thing. Additionally, Amanda and Brian are free to agree to additional visitation beyond the minimum amount established by the decree. The visitation schedule provided is only to be enforced if "the parties are unable to agree regarding visitation." Therefore, we affirm the visitation schedule.

## V. Valuation of Marital Residence

Brian claims the district court erred in not valuing the marital home. At trial each of the parties presented expert testimony regarding the value of the house, although there was some evidence Brian's expert may have been biased because of his friendship with Brian. The district court awarded the home to Amanda and one-half of the equity to Brian. The district court ordered Amanda to refinance the home and determined the value of the property would be established by the appraisal of the home. Costs of the refinancing would be divided evenly and applied against each party's equity.

Our law "provides much leeway to the trial court, even permitting the trial court to devise its own scheme for valuation." *In re Marriage of Dennis*, 467 N.W.2d 806, 808 (Iowa Ct. App. 1991). However, "[i]t is the province of the trial

court to determine the value of marital property. The trial court cannot delegate this responsibility." *Id.* While the district court's method of valuation may be a rational way to determine the value of the residence, it is also an impermissible delegation of its essential duties.

After a thorough review of the record, we find the evidence supports a valuation of $174,000. This value is "within the range of the evidence*." In re Marriage of Wiedemann*, 402 N.W.2d 744, 748 (Iowa 1987). Our finding takes into account the testimony of the expert witnesses, the relationship between Brian and his expert, the age of the house, and the improvements made to the residence after the initial purchase.

### VI. Attorney Fees

Both parties request attorney fees. An award of appellate attorney fees is not a matter of right but rests within our discretion. *In re Marriage of Scheppele*, 524 N.W.2d 678, 680 (Iowa Ct. App. 1994). In order to determine whether attorney fees should be awarded "we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997). We determine neither party is entitled to an award of attorney fees.

We affirm the district court's decision as modified.

**AFFIRMED AS MODIFIED.**