# IN THE COURT OF APPEALS OF IOWA

No. 15-1985
Filed April 19, 2017

IN RE THE MARRIAGE OF MELISSA LYNE SNIDER
AND JONATHAN EDWARD SNIDER

Upon the Petition of
**MELISSA LYNE SNIDER,**
Petitioner-Appellee,

And Concerning
**JONATHAN EDWARD SNIDER,**
Respondent-Appellant.

_____

Appeal from the Iowa District Court for Lee County, Mary Ann Brown, Judge.

Jonathan Snider appeals the property-valuation provision in the decree dissolving his marriage. **AFFIRMED AS MODIFIED.**

Beau A. Bergmann of Bergmann Law Firm, P.L.L.C., Des Moines, for appellant.

Carl A. Saunders of Saunders & Braden Law Firm, Fort Madison, for appellee.

Considered by Doyle, P.J., Tabor, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**TABOR, Judge.**

In this appeal from the decree dissolving the marriage of Jonathan and Melissa Snider, Jonathan contests the district court's valuation of three assets—his tools of trade and shop equipment, a GMC Acadia, and two checking accounts. He argues the court's valuations resulted in an inequitable division of marital property. Although we find the valuations of the vehicle and bank accounts fell within the permissible range of the evidence, we agree with Jonathan that the trial record does not support the district court's valuation of his tools of trade and shop equipment. Accordingly, we modify the decree to award Jonathan a larger equalization payment.

## I.    Facts and Prior Proceedings

Melissa and Jonathan were married in September 2000. They have three children together. Throughout their marriage, Melissa stayed at home and cared for the children, while Jonathan, who owned his own business, worked as a blacksmith and farrier. Jonathan's average income was approximately $51,967. In the later years of the marriage, Jonathan and Melissa began to disagree about whether she should be working outside the home, with Jonathan urging Melissa, who had an associate's degree in equine science, to work while the children were in school. After the parties separated, Melissa began working at a hog-confinement business where she earned thirteen dollars an hour and worked an average of approximately twenty-eight hours each week.[1]

---

[1] The district court calculated Melissa's annual income at $19,689 but noted: "If she was working full time at this job, her gross annual income would be $27,040."

Melissa filed a petition for dissolution of marriage in August 2014. By the time of trial on August 19, 2015, Melissa and Jonathan had agreed to several aspects of the dissolution decree, but the issues of property valuation and division remained unresolved.[2] The day before trial, the parties submitted a stipulation of assets and liabilities. In compliance with local court rule 24 of Iowa's Eighth Judicial District, the stipulation included valuations the parties agreed upon and disputed, including the following values for the items at issue on appeal:

**ASSETS**

| Description | Owner | Agreed Recipient | Melissa's Value | Jonathan's Value | Agreed Value |
|---|---|---|---|---|---|
| 2010 GMC Acadia | Melissa | Melissa | | | $13,192 |
| Pilot Grove Savings Bank Checking | Jonathan | Jonathan | Unknown | $4420 | |
| Pilot Grove Savings Bank Checking | Joint | Melissa | Unknown | $1015.62 | |
| Tools of Trade and Shop Equipment | Jonathan | Jonathan | $20,000 | Unknown | |

One week earlier, Melissa's attorney had filed a different stipulation of assets and liabilities, which assigned different values to the listed items.[3] Neither Jonathan nor his attorney signed this earlier version. At trial, Melissa's attorney admitted the older stipulation as an exhibit, explaining that the parties had filed a revised stipulation the day before: "The Court has the Rule 24 that we struggled with yesterday. The one that's in the exhibits, . . . that's not the one

---

[2] The parties had agreed to joint legal custody and that Melissa would retain physical care of the children. The issues of spousal support, child support, and visitation were not fully settled before trial. Those issues are not a subject of this appeal.

[3] Melissa had valued the GMC Acadia at $20,000. The filing indicated Jonathan had placed values on the two Pilot Grove accounts of $1500 and $1015.62. Finally, Melissa had asserted Jonathan's tools of trade and shop equipment were of "unknown" value.

that we came up with yesterday, but the numbers and the items are the same on both."

Neither Melissa nor Jonathan admitted the new stipulation as an exhibit, but the district court indicated it would "take judicial notice of the entire court file." On October 23, 2015, following trial and post-trial written argument, the district court issued the dissolution decree. The court addressed how it used the second stipulation in determining the value of the parties' assets and liabilities, explaining: "For some of the assets, one of the parties gave a value for the asset and the other gave no information about it. The value that the court . . . utilize[d] for said assets [was] that which had the most support in the record." Under this framework, the court allocated the disputed assets as follows, adopting the values provided in the second stipulation, whether agreed-upon or disputed:

**ASSETS**

| Description | Recipient | Value |
|---|---|---|
| 2010 GMC Acadia | Melissa | $13,192 |
| Pilot Grove Savings Bank Checking | Jonathan | $4420 |
| Pilot Grove Savings Bank Checking | Melissa | $1015 |
| Tools of Trade and Shop Equipment | Jonathan | $20,000 |

The court concluded: "The values for the assets are those that were supported by the evidence.[4] In addition, some of the assets had no evidence about their value. As a result, no value was attached to them." Because Melissa left the

---

[4] The court had previously rejected Melissa's claim the good will of Jonathan's business should be valued, finding: "The only value of this business is the tools of his trade. The other value is Jon as the sole individual associated with the business."

marriage with more equity than Jonathan, the court ordered Melissa to pay Jonathan an equalization payment of $9000.[5]

Jonathan appeals the district court's order.

## II.     Scope and Standard of Review

We review dissolution cases de novo, examining the record as a whole and adjudicating anew the issues properly before us. *See In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013); *see also* Iowa R. App. P. 6.907. We give weight to the fact-findings of the district court, but we are not bound by them. *See In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016).

## III.    Analysis

Jonathan challenges the district court's valuation of his tools of trade and shop equipment, Melissa's 2010 GMC Acadia, and two checking accounts at Pilot Grove State Bank. He contends the court's erroneous valuations resulted in an inequitable division of assets.

As Melissa observes, the district court's valuations came directly from the assets-and-liabilities stipulation jointly filed the day before trial. Accordingly, to resolve the valuation issues, we must determine the effect of that stipulation.

As an initial matter, we address the complication of having two stipulations: the first signed by only one party, but offered as an exhibit; and the second signed by both parties on the eve of trial, but not offered as an exhibit.

---

[5] The district court awarded Melissa rehabilitative spousal support in the amount of $500 a month for sixty months. The court reasoned:

> Given the length of the marriage, the fact that Melissa took herself out of the workforce in order to raise the parties' children, and the fact that Jon[athan] makes substantially more than her, . . . she should be awarded a modest amount of rehabilitative spousal support, until she can work herself back into the workforce full time.

Jonathan suggests on appeal we should consider only the initial stipulation, which he did not sign, because it was entered into evidence. He does not cite any authority for this position, and he does not explain why we should disregard the second stipulation. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *see also EnviroGas, L.P. v. Cedar Rapids/Linn Cty. Solid Waste Auth.*, 641 N.W.2d 776, 785 (Iowa 2002) (declining to consider issues mentioned but lacking in development or supportive authority). We are not persuaded a stipulation signed by only party should take precedence over a newer, jointly filed stipulation. *See* Iowa Code § 598.21(5)(k) (2015) (indicating the court "shall divide all property . . . equitably between the parties after considering," among other things, "[a]ny written agreement made by the parties concerning property distribution"). Although the parties failed to offer the second stipulation into evidence, the court indicated it would take judicial notice of the document, and Jonathan did not object or otherwise contest the validity of the second stipulation. Accordingly, we consider the second stipulation in our analysis.

We treat a stipulation in this setting as "a contract between the parties." *In re Marriage of Briddle*, 756 N.W.2d 35, 40 (Iowa 2008) (citation omitted). A party to the stipulation does not have an entitlement "as a matter of right" to unilaterally rescind a stipulation. *In re Marriage of Ask*, 551 N.W.2d 643, 646 (Iowa 1996). And while stipulations are generally entitled "to all of the sanctity of an ordinary contract," a district court may reject a stipulation relating to property if it "is unfair or contrary to law." *Id.* (citation omitted).

**Melissa's GMC Acadia.** Consideration of the second stipulation simplifies our review of this vehicle's value. Melissa and Jonathan settled on the value attached to Melissa's GMC Acadia in the second stipulation, and neither presented contradictory evidence at trial about the vehicle's worth. The district court used the parties' agreed-upon valuation in the decree. We find no error in the district court's adoption of the parties' valuation.

**Bank Accounts.** Similarly, the second stipulation guides our analysis of the bank-account valuations. Although the two Pilot Grove bank accounts were categorized as "disputed" in the stipulation, Jonathan himself asserted his account contained $4420 and a joint account contained $1015.62. On cross-examination, Jonathan initially confirmed he had $4420 in his bank account, an amount reflected in a financial affidavit he had filed nine days before trial, but later, he disputed that amount, claiming his account balance had dropped to $2219 since he filed the affidavit. The district court used Jonathan's values from the second stipulation in the dissolution decree.

Jonathan first argues a joint account with a balance of $1015 was not awarded to either party. Both stipulations indicate the existence of two Pilot Grove accounts: one joint account and one account owned by Jonathan. On both stipulations, Jonathan asserts the joint account had a balance of $1015.62. The district court awarded the account with the $1015 balance to Melissa. We find no support in the record for Jonathan's argument.

Jonathan next argues no evidence in the record supports the court's conclusion that the other account, awarded to him, had a balance of $4420. Considering both the second stipulation and Jonathan's financial affidavit, we

disagree with his argument. *See In re Marriage of Higgins*, 507 N.W.2d 725, 726 (Iowa Ct. App. 1993) (accepting valuation based, in part, on financial affidavit). We find the district court's valuation of Jonathan's bank account was well within the range of the evidence, and we decline to disturb it. *See In re Marriage of Hoak*, 364 N.W.2d 185, 192–93 (Iowa 1985).

**Tools of the Trade.** But we find insufficient support for the district court's determination that Jonathan's tools of trade and shop equipment were worth $20,000. Only Melissa provided a value for these items in the second stipulation, and she did not explain at trial how she arrived at her $20,000 valuation. And although she introduced photographs of Jonathan's tools at the trial, she provided no other information about the tools' value in her testimony, nor did she question Jonathan about valuation on cross-examination.

In her written argument following trial, Melissa contended: "The second [stipulation] filed August 18, 2015, signed by both attorneys, indicated that the tools [Jonathan] would be receiving are worth $20,000.00." Similarly, on appeal, she faults Jonathan for listing the tools' value as "unknown," and asserts the district court "properly valued" the tools and equipment by deferring to Melissa's valuation in the stipulation. She cites no documentation supporting the district court's determination other than the second stipulation.

Melissa misconstrues the impact of the disputed valuation in the stipulation. Simply because the $20,000 amount appeared on a document entitled "stipulation" does not mean Jonathan agreed to her valuation. Rather, the parties stipulated only that the tools of trade were marital assets and would be awarded to Jonathan; the differing values advanced by the parties in the

second stipulation indicated this valuation was disputed and needed to be resolved at trial. *See Stipulation*, Black's Law Dictionary (10th ed. 2014) ("A voluntary agreement between opposing parties concerning some relevant point; esp., an agreement relating to a proceeding, made by attorneys representing adverse parties to the proceeding.").

We accord significant leeway to valuation decisions by district courts. *See In re Marriage of Dennis*, 467 N.W.2d 806, 808 (Iowa Ct. App. 1991); *see also In re Marriage of Vieth*, 591 N.W.2d 639, 640 (Iowa Ct. App. 1999) (acknowledging deference to district-court valuations when "accompanied with supporting credibility findings or corroborating evidence"). "Yet, the law does not provide so much 'leeway' as to condone the relinquishment of judicial duties. It is the province of the trial court to determine the value of marital property." *Dennis*, 467 N.W.2d at 808 (disapproving of court's use of a bidding process between the parties to determine the valuation of a corporation). Here, the court summarily adopted the $20,000 value asserted by Melissa in the stipulation, when that figure had no support in the testimony or other exhibits at trial. By accepting Melissa's unsupported estimate for the tools, the district court contradicted its own guiding principle stated in the decree that when the value was disputed in the parties' stipulation, it would accept the value with the "most support in the record." The $20,000 value had no support in the record. Melissa did not testify to how she arrived at her estimation of the value of the tools used by Jonathan in his horseshoeing business, nor did her attorney question Jonathan on this point. While we have no doubt Jonathan's tools and equipment have some value, the

record before us is devoid of the evidence necessary to assign a specific amount.

**Modification.** Accordingly, we recalculate the parties' assets and liabilities without including a value for Jonathan's tools of trade and shop equipment.

## ASSETS

| MELISSA | | JONATHAN | |
|---|---|---|---|
| **Description** | **Value** | **Description** | **Value** |
| House | $120,000 | 2011 Ford | $20,227 |
| 2010 GMC Acadia | $13,192 | 2006 Ford | $7139 |
| Pilot Grove checking | $1015 | Pilot Grove checking | $4420 |
| Household goods/appliances | $9000 | Household goods/appliances | $1000 |
| IRA | $2000 | IRA | $2009 |
| 2004 flatbed trailer | $2500 | Guns | |
| Echo mower | $2500 | Guitars | $500 |
| Echo blower/weed eater | $200 | 2004 Gooseneck | $1000 |
| Kawasaki Mule | $1000 | Bass boat/trailer | $5950 |
| Jewelry | $1000 | 2014 Gooseneck | $21,500 |
| | | 5 amps | |
| | | Canoe | $200 |
| | | Hunting/fishing gear | $250 |
| | | Tools of trade | |
| | | Jewelry | $50 |
| | | Gun safe | $2000 |
| **TOTAL** | **$152,407** | | **$66,245** |

## DEBT

| MELISSA | | JONATHAN | |
|---|---|---|---|
| **Description** | **Value** | **Description** | **Value** |
| Mortgage | $72,000 | 2011 Ford | $21,706 |
| 2010 GMC Acadia | $10,446 | 2014 Gooseneck | $21,500 |
| **TOTAL** | **$82,446** | | **$43,206** |

Our recalculation results in Jonathan leaving the marriage with equity of $23,039 ($66,245 – $43,206) and Melissa leaving the marriage with equity of $69,961

($152,407 – $82,446). To divide these assets and liabilities equally, Melissa would owe Jonathan an equalization payment of $20,250.[6]

We strive to divide the parties' assets and liabilities in a manner that is fair and equitable. *In re Marriage of Russell*, 473 N.W.2d 244, 246 (Iowa Ct. App. 1991). But equitable is not synonymous with equal. *See In re Marriage of Anliker*, 694 N.W.2d 535, 542 (Iowa 2005). Rather, in determining what division of property is equitable in each case, we evaluate the factors listed in Iowa Code section 598.21(5), including the length of the marriage, the property brought into the marriage, each party's contributions to the marriage, their age and health, their earning capacities, and any other relevant circumstances. *Id.*

Considering the section 598.21(5) factors, we find an equalization payment in an amount less than $20,250 is equitable under these circumstances. As the district court noted: "Melissa was out of the workforce for approximately [fourteen] years to raise the parties' children. Even if Melissa works full time at her current job, she still will make significantly less than Jon[athan]." Moreover, even though we are unable to determine a monetary value for Jonathan's tools and shop equipment on this record, we are convinced those items carry some value—considering the photographs showing an array of tools and the amounts Jonathan claimed the tools depreciated in his tax returns. Accordingly, we modify Melissa's equalization payment to $15,000, less any amounts she has already paid.

---

[6] This amount takes into account the district court's award of $3211 in attorney fees to Melissa, which Jonathan does not contest on appeal. Like the district court, we reduce the equalization payment by $3211 rather than grant Melissa a judgment against Jonathan for that amount.

**Appellate Attorney Fees.** Finally, Melissa requests appellate attorney fees. Jonathan asks that we split the parties' appellate attorney fees equally. An award of appellate attorney fees is discretionary. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). "[W]e consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *McDermott*, 827 N.W.2d at 687 (citation omitted). Here, although Melissa has a reduced ability to pay, Jonathan was partially successful on appeal. Considering these factors, we decline to award appellate attorney fees in this matter. Costs are divided equally.

**AFFIRMED AS MODIFIED.**

Doyle, P.J., concurs; Scott, S.J., partially dissents.

**Scott, Senior Judge.** (concurring in part and dissenting in part)

While I agree with the majority's conclusion that the valuation on the vehicle and the bank accounts fell within the permissible range of the evidence, I disagree that the value assigned the tools and shop equipment was not supported by the record.

As the majority concludes, only Melissa provided any value for the tools and shop equipment. The parties agreed that Jonathan should be awarded the asset, and Jonathan was aware of the value Melissa placed on the asset. It is clear the tools and shop equipment were used by Jonathan in his business, and he would be the person most knowledgeable as to the extent and value of the asset. To the extent that Jonathan disagreed with the figure that Melissa placed on the asset, it was Jonathan's burden to come forward with an alternative valuation; yet he offered no valuation of the asset.

By giving the asset a zero value and thereby increasing the property equalization payment Melissa must make, the majority rewards Jonathan for failing to offer an alternative valuation of the asset. In addition, the majority effectively gave the tools and shop equipment a value of $10,000, instead of $20,000 that Melissa asserted the asset was worth, when the majority decided to use its equitable power to lower the equalization payment that resulted from giving the asset a zero value. This reduced valuation has absolutely no support in the record.

With only one valuation and no other evidence to support an alternative valuation, I conclude the district court correctly assigned a $20,000 value to the tools and shop equipment awarded to Jonathan. When there is no other

evidence as to the value of an asset except for the parties' claims, "we defer to the judgment of the district court." *In re Marriage of Sullins*, 715 N.W.2d 242, 251 (Iowa 2006). I would affirm the district court's decision in its entirety including the $9000 property equalization payment.